2024 PA Super 306

| | | |
|---|---|---|
| CAROL DERBYSHIRE F/K/A PROSPER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| JEFFERSON FRANKFORD HOSPITAL, JEFFERSON TORRESDALE HOSPITAL, JOHN DOES 1-5, FRANKFORD HOSPITAL OF THE CITY OF PHILADELPHIA, ARIA HEALTH, ARIA JEFFERSON HEALTH, FRANKFORD HOSPITAL, FRANKFORD TORRESDALE HOSPITAL, FRANKFORD HEALTHCARE SYSTEM, INC., THOMAS JEFFERSON UNIVERSITY HOSPITAL, JEFFERSON HEALTH | : | No. 1409 EDA 2023 |

Appeal from the Judgment Entered July 21, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  200202192

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY STABILE, J.: **FILED DECEMBER 20, 2024**

Appellant, Carol Derbyshire f/k/a Prosper, appeals from a judgment entered against her and in favor of Appellee Aria Health[1] in this personal injury action.  Prior to trial, a motions judge struck Appellee's answer to the complaint and new matter with prejudice due to untimeliness under Pa.R.C.P. 1029(b).  Another judge who presided over trial nonetheless refused

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] On April 3, 2020, the other parties captioned above were dismissed from this action via stipulation.

Appellant's requests to direct the jury to find in her favor on the issues of negligence and causation and allowed these issues to go to the jury. The jury returned a verdict in Appellee's favor on the issue of causation and awarded zero damages. We hold that the trial judge in post-trial proceedings did not commit error in denying Appellant's motion for a new trial limited to the issue of damages, and we affirm.

The record reflects that on February 19, 2020, Appellant filed a complaint alleging that on May 24, 2018, she slipped and fell on pieces of broken cement at Appellee's premises, causing her to fracture her left leg and incur other injuries. The complaint alleged as follows:

13. On or about May 24, 2018, at or about 7:30 p.m. [Appellant] was a business invitee at Frankford Torresdale Hospital located at 10800 Knights Road, Philadelphia, PA 19114, and, when she stepped down from a cement landing she was caused to slip, trip and/or otherwise fall to the ground because of a defective condition existing thereon, including pieces of broken cement, which caused her to suffer severe and serious injuries and damages which are described at length below.

14. At all times relevant hereto, [Appellee] owned, managed, possessed, leased, controlled and/or [was] otherwise responsible for maintenance of the premises where [Appellant] fell and located at 10800 Knights Road, Philadelphia, PA 19114.

15. This incident resulted from the negligence and carelessness of [Appellee], [its] agents, servants, workmen and/or employees, and was due in no manner whatsoever to any act or failure to act on the part of [Appellant].

16. As a result of the aforesaid incident, [Appellant] has suffered injuries which are serious and permanent in nature including, but not limited to: non-displaced fracture involving the posterior aspect of the lateral tibial plateau with marrow edema, left knee . . .

- 2 -

Complaint, ¶¶ 13, 15-16.

On February 27, 2020, Appellant served Appellee with the complaint and a notice to defend instructing Appellee to file written defenses to the complaint within twenty days. Over two years later, on June 15, 2022, Appellee filed an answer to the complaint with new matter. On June 24, 2022, Appellee filed preliminary objections requesting the court to strike the answer and new matter with prejudice due to untimeliness. On August 17, 2022, a Motions Court judge entered an order sustaining Appellant's preliminary objections and striking Appellee's answer and new matter with prejudice.[2]

On October 24, 2022, the case proceeded to a jury trial before a different judge. Before opening statements, outside the presence of the jury, Appellant's counsel argued, "[Based on] the fact that [Appellee] did not answer the complaint, [Appellant contends] that negligence and factual cause are admitted and that this trial should move ahead with almost just an assessment of damages." N.T., 10/24/22, at 6. Counsel identified Pa.R.Civ.P. 1029(b) as authority for this argument. *Id.* at 7-11. The judge declined to rule that negligence and causation were admitted and ruled that the jury should decide these issues.

Although the court permitted Appellant to tell the jury that portions of the complaint were admitted, it placed limits on what counsel could say. As a result, counsel told the jury that the following was admitted:

_____

[2] Appellee does not object to this order in its appellate brief.

On or about May 24, 2018, at or about 7:30 p.m. [Appellant] was a business invitee at Frankford-Torresdale Hospital located at 10800 Knights Road, Philadelphia, [PA] 19114, and, when she stepped down from a cement landing, she was caused to slip, trip and/or otherwise fall to the ground because of a condition existing thereon, including pieces of broken cement, and she subsequently suffered injuries and damages which are described at length below.

\* \* \* \*

[Appellant] has suffered injuries including, but not limited to: a non-displaced fracture involving the posterior aspect of the lateral tibial plateau with marrow edema.

*Id.* at 35 (cleaned up). The trial court did not allow Appellant to inform the jury that Appellee admitted negligence or admitted that it caused Appellant's injuries. *Id.*

During trial, Appellant's primary claim was that she suffered a fractured left knee due to her fall at Appellee's facility.[3] During Appellant's testimony, however, she admitted on cross-examination that (1) at the accident scene, her friend Jen took two photographs of her right leg but no photographs of her left leg, (2) she did not go the emergency room until five days after her fall, (3) she complained of right knee pain in the emergency room but not left knee pain, (4) she had another fall at her home after the fall at Appellee's facility.

The jury determined that Appellee was negligent but that its negligence was not the factual cause of Appellant's injuries. As a result, the jury returned

_____

[3] Appellant also claimed that this fall injured her lower back and neck, but most all of her testimony and that of her counsel's argument concerned her left knee. Since consideration of these other claimed damages does not affect our decision, references to damages to Appellant's left knee shall also include these other damages because the jury found against Appellant on causation.

- 4 -

a verdict in favor of Appellee on the issue of causation. Appellant filed post-trial motions, which the court denied. An appeal to this Court from the order denying post-trial motions followed. Subsequently, Appellant perfected her appeal by filing a praecipe for entry of judgment on the verdict. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW BY READING JURY INSTRUCTIONS REGARDING THE DEFINITION OF NEGLIGENCE WHEN APPELLEE, ARIA HEALTH, ADMITTED TO ALL FACTUAL ALLEGATIONS IN APPELLANT'S COMPLAINT PURSUANT TO PA.R.C.P. 1029(b) AND THOSE ALLEGATIONS PROVE APPELLEE'S NEGLIGENCE?

2. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW BY READING TO THE JURY INSTRUCTIONS REGARDING THE DEFINITION OF FACTUAL CAUSE WHEN APPELLEE, ARIA HEALTH, ADMITTED TO ALL FACTUAL ALLEGATIONS IN APPELLANT'S COMPLAINT PURSUANT TO PA.R.C.P. 1029(b) AND APPELLANT'S TREATING PHYSICIAN TESTIFIED THAT HER INJURIES WERE CAUSED BY THE FALL OF MAY 24, 2018?

3. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT INSTRUCTED THE JURY TO ANSWER QUESTION 1 ON THE JURY VERDICT SLIP REGARING THE ISSUE OF NEGLIGENCE WHERE ALL ALLEGATIONS OF FACT IN APPELLANT'S COMPLAINT WERE DEEMED ADMITTED AND SAID FACTS ESTABLISHED APPELLEE'S NEGLIGENCE?

4. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT INSTRUCTED THE JURY TO ANSWER QUESTION 2 ON THE JURY VERDICT SLIP REGARDING THE ISSUE OF FACTUAL CAUSE WHERE ALL ALLEGATIONS OF FACT IN APPELLANT'S COMPLAINT INCLUDING FACTS CONCERNING APPELLANT'S INJURIES WERE DEEMED ADMITTED, AND APPELLANT'S TREATING PHYSICIAN TESTIFIED THAT APPELLANT'S INJURIES WERE CAUSED BY THE FALL OF MAY 24, 2018?

5. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT PERMITTED APPELLEE, ARIA HEALTH'S, ATTORNEY TO CROSS EXAMINE APPELLANT'S MEDICAL EXPERT, MARK AVART, D.O., ON THE ISSUES OF CAUSATION AND DAMAGES WHERE ALL ALLEGATIONS OF FACT, INCLUDING APPELLANT'S INJURIES AND DAMAGES, WERE DEEMED ADMITTED AND THE ONLY DEFENSE LEFT TO APPELLEE WAS COMPARATIVE NEGLIGENCE?

Appellant's Brief at 4-5.

Although Appellant lists five issues in her statement of questions presented, her position essentially reduces to one question: whether the trial court erred by allowing the issues of negligence and causation to go to the jury. According to Appellant, Appellee admitted negligence and causation by failing to file a timely answer to the complaint. Therefore, Appellant continues, the trial court should have directed the jury to enter a verdict in Appellant's favor on the issues of negligence and causation and limited trial to the amount of damages. In this appeal, Appellant seeks a new trial limited solely to damages.

In assessing whether a trial court properly granted or denied a request for a new trial, our standard of review is as follows:

> [T]he trial court must follow a two-step process in responding to a request for a new trial. The trial court must determine whether a factual, legal or discretionary mistake was made at trial. If the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. Moreover, … a new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

[There then follows] an additional two-step analysis for appellate review of a trial court's determination to grant or deny a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was, or was not, made. In so doing, … the appellate court must apply the appropriate standard of review. If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error. If the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion. … [A] trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis. If the appellate court discerns that a mistake was made at trial, however, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial.

*Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 106 (Pa. Super. 2002) (internal citations and quotation marks omitted) (citing *Harmon v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000)). Presently, Appellant, in sum, alleges the trial court erred in its application of Rule 1029(b) by rejecting her contention that Appellee's deemed admission of the factual averments in her complaint entitled her to proceed solely and immediately on a trial of damages alone. This issue requires that we scrutinize the trial court's decision for legal error.

Before proceeding to examine the question of law presented, we note Appellee does not challenge or take issue with the trial court striking its

answer as untimely. Our Supreme Court has held that trial courts may strike an answer to a complaint if a party "blatant[ly] disregard[s] . . . the time limits established by the Rules of Civil Procedure, without just cause for the delay," because such conduct "constitutes an abject indifference to the Rules." *Peters Creek Sanitary Authority v. Welch*, 681 A.2d 167, 170 (Pa. 1996). The decision to strike an answer by the trial court is subject to an abuse of discretion standard. *Id.* As a result of Appellee greatly exceeding the time in which it had to respond to Appellant's complaint, the trial court did not abuse its discretion in striking Appellee's answer rendering all factual averments in the complaint admitted. Pa.R.C.P. 1029(b) ("[a]verments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication"). Appellant filed and served a complaint on Appellee, but Appellee failed to answer the complaint for two years. When Appellee finally filed its answer, Appellant filed preliminary objections requesting the trial court to strike the answer as untimely. The court sustained the preliminary objections and struck the answer. Since this decision was within the court's discretion, Appellant was entitled to have all factual averments in her complaint admitted at time of trial under Pa.R.Civ.P. 1029.

We now examine the legal effect that the striking of Appellee's answer had on the trial of this action. On the morning of trial, Appellant argued that the order striking Appellee's answer required the court to deem negligence

and causation admitted and to limit trial to the issue of damages. The trial court denied Appellant's request and ruled that the jury should decide the issues of negligence and causation. The decision to allow negligence to go to the jury did not prejudice Appellant, since the jury found, in any event, that Appellee was negligent. Therefore, we limit our discussion to whether the trial court erred in permitting the issue of causation to go to the jury despite the deemed factual admissions contained in Appellant's complaint.

Previously, in an unpublished memorandum, we addressed whether a plaintiff who obtains a default judgment in a tort action also is relieved of his obligation to provide evidence of a causal connection between the defendant's tortious conduct and the damages for which they seek relief. *Knudsen v. Elliott Brownstein, M.D., et. al.,* 2019 WL 4273894 (Pa. Super., Sep. 9, 2019). Although *Knudsen* concerned the effect of a default judgment under Pa.R.C.P. 1037(b)(1),[4] we find the rule to be analogous for our present

_____

[4] Pa.R.C.P. 1037(b)(1) provides as follows:

> (b) The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice to defend or, except as provided by subdivision (d), for any relief admitted to be due by the defendant's pleadings.

> > (1) The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.

purposes, since like Rule 1029, a default judgment under Rule 1037 operates as an admission by the defendant of all the well-pleaded facts alleged in the complaint, **Wilson v. Maryland Casualty Company**, 105 A.2d 304, 312 (Pa. 1954). A default under Rule 1037 also precludes an opponent from challenging liability. **Mother's Restaurant, Inc., v. Krystkiewicz**, 861 A.2d 327, 335 (Pa. Super. 2004). A review of the deemed admission of the facts in Appellant's amended complaint likewise answers the question of liability, and as stated, the jury in any event found Appellee liable for negligence. The question remaining is one of causation.

In **Knudsen**, the plaintiff injured his leg while moving furniture in his apartment. The plaintiff contacted Dr. Aneesh Khushman complaining of a laceration, swelling and some blood. Despite continuing complaints and a consultation with another defendant physician, Dr. Khushman continued to advise the plaintiff that seeking outside treatment was unnecessary and that the injury would heal naturally. Eventually, the plaintiff underwent a partial amputation of his foot, a total of "four or five" operations, and ultimately lost part of his left foot, including all five toes. The plaintiff sued Dr. Khushman and others for improper medical treatment. Through discovery, the plaintiff learned that Dr. Khushman was not a resident at the treating hospital and in fact was not a physician licensed to practice medicine anywhere in the United States or abroad. The plaintiff filed an amended complaint alleging fraud in addition to improper medical treatment. Dr. Khushman did not file a response

to the amended complaint, and the prothonotary entered a default judgment against him. The plaintiff proceeded to an assessment of damages trial under Pa.R.C.P. 1037(b)(1). Only the plaintiff testified. He did not introduce any medical records, expert medical reports, or medical testimony. Dr. Khushman did not appear. The trial court entered its decision awarding plaintiff zero dollars in damages. In deciding post-trial motions, the trial court explained that the plaintiff failed to present credible evidence regarding the causal relationship between his injury and the amputation and other claimed damages. The court further found that plaintiff failed to prove that Dr. Khushman's fraud was the factual cause of any injury or loss. The court determined that causation was not deemed admitted by Dr. Khushman's failure to respond to the amended complaint, and that the plaintiff needed to prove causation at the damages trial. An appeal to our Court followed.

On appeal we fashioned the question presented as: to what extent does a plaintiff in a tort action, who obtains a default judgment, have to prove a causal connection between the tortious conduct of the defendant and the damages sought? It was the plaintiff's contention, in essence, that the default judgment established liability, and therefore also causation, for purposes of both the negligence and fraud claims. We disagreed. We observed that no one cited, and we were unable to locate, any Pennsylvania case law that addressed the causation and damage issues implicated in the appeal.

However, our review of how other jurisdictions addressed the causation question at issue informed our disposition of the appeal.

We found persuasive the Texas case of **Morgan v. Compugraphic Corp.,** 675 S.W. 2d 729 (Tex. 1984). In **Morgan**, the plaintiff filed a complaint against the defendant for negligence for injuries she sustained as a result of inhaling chemical fumes released from a typesetting machine. The plaintiff obtained a default judgment based on the defendant's failure to answer the complaint. After a hearing on damages in which only the plaintiff testified, the court awarded the plaintiff $200,000.00 in damages. The defendant appealed. The Supreme Court of Texas concluded that despite the default judgment, the plaintiff still had to prove a causal nexus between her injuries and her exposure to the chemical fumes. The court explained:

> In a personal injury case, the plaintiff typically alleges that the defendant's conduct caused an event—an automobile accident, a fall, or in this case, the release of chemical fumes—and that this event caused the plaintiff to suffer injuries for which compensation in damages should be paid. Thus, **at trial [for damages] the plaintiff must establish two causal [n]exuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries**.
>
> The causal nexus between the defendant's conduct and the event sued upon relates to the liability portion of plaintiff's cause of action. **Here, we use the term "liability" to mean legal responsibility for the event upon which suit is based . . . It is this causal nexus between the conduct of the defendant and the event sued upon that is admitted by default . . .**

- 12 -

> **Whether the event sued upon caused any injuries to the plaintiff is another matter entirely. The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action.** Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event made the basis of suit; that the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action.

*Id.* at 731-32 (emphasis added). The Texas court dissected the issue of causation through the lens of a default judgment, explaining that causation's first component – that which is admitted upon default – establishes "liability". A default judgment, however, does not resolve the second – the causal connection between the event sued upon and damages. The plaintiff must still prove damages even when a default judgment has been entered and liability has been deemed admitted

The ***Knudsen*** court found ***Morgan*** and authority from other jurisdictions and sources governing the interplay between default judgments (or admitted liability) and proof of damages, while not explicitly outlined in Pennsylvania case law, consistent with Pennsylvania jurisprudence. ***Knudsen,*** 2019 WL at 4273894, *10 (citing ***Neison v. Hines,*** 653 A.2d 634, 638 (Pa. 1995) (evidence at trial left room for disagreement whether pain resulting from plaintiff's injuries was as severe as she claimed or whether accident was in fact causative); ***McArdle v. Panzek****,* 396 A.2d 658, 662 (Pa. Super. 1978) (trial court erred in allowing jury to assess damages where

- 13 -

plaintiff's medical expert testified that he could not opine whether sacroiliac sclerosis was caused by accident for which defendant had admitted liability; case remanded for new trial on damages); *King v. Fayette Aviation*, 323 A.2d 286 (Pa. Super. 1974) (even where default judgment is obtained, defendant can only be responsible for actual damages that he caused)).[5]  In conclusion, *Knudsen* held that under Rule 1037(b)(1), a plaintiff who obtains a default judgment in a tort action is not relieved of his obligation to provide evidence of a causal connection between the defendant's tortious conduct and the damages for which he seeks relief.  *Knudsen,* 2019 WL at 4273894, *12. Although the plaintiff in *Knudsen* established liability and the only issue at trial was the amount of damages to which he was entitled, he still was required to prove that his injuries and losses arose from the conduct that gave rise to the suit.  Thus, he needed to present expert medical testimony on the causal connection between Dr. Khushman's tortious conduct and the damages he was seeking.

In the present case, the trial court struck Appellee's answer and new matter to the amended complaint under Rule 1029(b).  The striking resulted in a deemed admission of all facts, and similar to a default judgment under

---

[5] In addition to the decisions cited in *Knudsen*, *see ICMFG & Associates, Inc. v. Bare Board Group Inc.,* 238 So.3d 326, 335 (Fla. 2d DCA 2017) (even where trial is on issue of damages only and liability is not in question, claimant remains obligated to prove some connexity between damages claimed and defendant's tortious conduct).

Rule 1037(b)(1), resulted in an admission only of "liability" by the Appellee. *See ICMFG* (trial court struck the Appellants' pleadings and entered a default against them on liability). This, however, did not immediately entitle Appellant to proceed to a trial on her unliquidated damage claim without first establishing that Appellee's conduct caused her damages. Appellee apparently was successful in convincing the jury that while Appellant suffered an injury, her claimed damages were not related to Appellee's tortious conduct. Appellee elicited testimony from Appellant on cross-examination that suggested that her fall on Appellee's property did not cause her injuries. Appellant claimed on direct examination that she suffered a fractured left knee due to her fall on Appellee's property. During cross-examination, however, she admitted, *inter alia*, that she did not go the emergency room until five days after her fall, she complained of right knee pain in the emergency room but not left knee pain, and she had another fall at her home after the fall at Appellee's facility. It therefore was within the jury's prerogative to award zero damages for the injuries claimed. Therefore, the trial court properly declined Appellant's post-trial motions seeking a new trial on damages.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/20/2024